## IN THE UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF DELAWARE

| | |
|---|---|
| NESSCAP CO., LTD., | |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| MAXWELL TECHNOLOGIES, INC. | Civil Action No.: 1:06-cv-00764-GMS |
| Defendant. | |
| NESSCAP CO., LTD. and NESSCAP, INC., | |
| Plaintiffs, | |
| v. | JURY TRIAL DEMANDED |
| MAXWELL TECHNOLOGIES, INC. | Civil Action No.: 1:07-cv-00035-GMS |
| Defendant. | |

## NESSCAP CO., LTD.'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO CONSOLIDATE C.A. 1:06-CV-00764-GMS WITH C.A. 1:07-CV-00035-GMS

Denise Seastone Kraft (DE No. 2778)

George W. Neuner (*Of the Massachusetts Bar*)
Brian M. Gaff (*Of the Massachusetts Bar*)

EDWARDS ANGELL PALMER &
DODGE LLP
919 North Market Street
Wilmington, DE 19801
(302) 777-7770
(302) 777-7263 (fax)

EDWARDS ANGELL PALMER &
DODGE LLP
111 Huntington Avenue
Boston, MA 02199-7613
(617) 439-4444
(617) 439-4170 (fax)

*Attorneys for Plaintiff NessCap Co., Ltd.*

Dated: March 23, 2007

# TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDING ................................................3

II.   SUMMARY OF THE ARGUMENT ....................................................................4

III.  STATEMENT OF FACTS.................................................................................4

IV.   ARGUMENT.....................................................................................................5

      A.    Maxwell's Motion Is Not Properly Before The Court ................................5

      B.    The Case That Maxwell Seeks to Consolidate With The Instant Action Is
            Not Yet Before This Court ..........................................................................8

V.    CONCLUSION .................................................................................................11

## **TABLE OF AUTHORITIES**

### **Cases**

*Ayres v. Jacobs & Crumplar, P.A.*
  99 F.3d 565 (3rd Cir. 1996) ............................................................................8

*Lampe v. Xouth, Inc.*
  952 F.2d 697 (3rd Cir. 1991) ..........................................................................8

*Sampath v. Concurrent Technologies Corp.*
  227 F.R.D. 399 (W.D. Pa. 2005) .....................................................................8

*Swindell-Dressler Corp. v. Dumbauld*
  308 F.2d 267 (3rd Cir. 1962) ...........................................................................3

### **Rules**

D. Del. LR 7.1.1 ....................................................................................2, 4, 5, 6, 9

Fed. R. Civ. P. 12....................................................................................1, 3, 7

Fed. R. Civ. P. 4......................................................................................8

Fed. R. Civ. P. 42(a) ...............................................................................3

## I.    NATURE AND STAGE OF THE PROCEEDING

This is a patent infringement action brought by Plaintiff NessCap Co., Ltd. ("LIMITED") against Maxwell Technologies, Inc. ("Maxwell"), a Delaware corporation. LIMITED filed this action on December 14, 2006, alleging that Maxwell infringes LIMITED's U.S. Patent No. 6,743,544. On January 3, 2007, Maxwell filed its Answer and Counterclaims for invalidity and noninfringement. LIMITED replied to Maxwell's Counterclaims on January 23, 2007.

On February 6, 2007, Maxwell filed a Motion to Transfer this action to U.S. District Court for the Southern District of California in San Diego where Maxwell previously had filed a patent infringement suit (Case No. 3:06-cv-02311-JAH-BLM; "the San Diego action") against LIMITED and its Delaware parent company, NessCap, Inc.

On January 18, 2007, LIMITED and its parent company filed – but did not serve – a Complaint against Maxwell in this Court for a declaratory judgment of invalidity and noninfringement of the patents at issue in the San Diego action (i.e., U.S. Patent Nos. 6,525,924 and 6,631,074) (case no. 1:07-cv-00035-GMS; "the DJ action"). As described in LIMITED's Opposition to Maxwell's Motion to Transfer (D.I. 18 at 6), LIMITED and its parent company filed the DJ action with the intent of pursuing it only if the San Diego District Court dismissed the litigation between the parties pending there in response to motions filed pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(5).

On March 8, Maxwell filed an Answer and Counterclaim in the DJ action without first being served with the summons and complaint in that action. Further, on March 13, the San Diego District Court ruled that the case there would continue, thereby obviating the need for the DJ action.

As described below, and in view of the decision by the San Diego District Court, LIMITED and its parent company have decided to terminate the DJ action, not serve process on Maxwell, and proceed with litigating the issues in San Diego. Nevertheless, Maxwell refuses to cooperate by withdrawing its motion and its pleadings in the DJ action, thereby necessitating the filing of this Opposition.

## II.    SUMMARY OF THE ARGUMENT

1.    Maxwell's Motion to Consolidate ("Motion") is not properly before the court in view of Maxwell's failure to meet and confer pursuant to D. Del. LR 7.1.1. Accordingly, Maxwell's Motion should not be entertained.

2.    Maxwell seeks to consolidate the instant action with a second action (i.e., the DJ action) that has not been served on it. Accordingly, the second action is effectively not before this Court. Without service of process it cannot proceed and, therefore, is not susceptible to Maxwell's Motion.

## III.    STATEMENT OF FACTS

LIMITED is the wholly owned subsidiary of NessCap, Inc., which is a Delaware corporation. LIMITED is a company located only in South Korea and organized under Korean law. LIMITED is engaged in the research, development, production, and sales of electrical energy storage products known as "ultracapacitors." LIMITED was formed on May 1, 2001 as a spin-off from Ness Corporation, which was formed in August 1999 to continue work started at the New Energy Storage System Center ("NESS") at the Institute of Advanced Engineering, a central R&D Center founded by Daewoo Group in August 1998. *See* Declaration of Sunwook Kim, Ph.D., D.I. 19, ¶¶ 4-7.

Maxwell is a Delaware corporation. Its headquarters is in San Diego, California and it has office and manufacturing facilities in Rossens, Switzerland. Balanson Declaration, D.I. 14, ¶ 3. Maxwell filed its San Diego action against LIMITED and its parent corporation on October 17, 2006 alleging infringement of its U.S. Patent Nos. 6,525,924 and 6,631,074. In November 2006 LIMITED and its parent company moved to dismiss the San Diego action pursuant to Fed. R. Civ. P. 12 for insufficient service and, in the case of the parent company, lack of personal jurisdiction as well. On March 13, 2007, the San Diego District Court granted in part and denied in part the motions to dismiss, effectively allowing the case to go forward against LIMITED and its parent company.

## IV.    ARGUMENT

There is no basis to consolidate the instant action with the DJ action assigned to this Court because, as discussed more fully below, the DJ action is not pending before this Court as required by Fed. R. Civ. P. 42(a). *Swindell-Dressler Corp. v. Dumbauld*, 308 F.2d 267, 273 (3rd Cir. 1962). Further, the issues presented in the unserved pleadings of the DJ action are now being litigated in another jurisdiction, San Diego, and Rule 42(a) does not permit consolidation of the instant action with the San Diego action. *Id.*

Even if the DJ action were pending in this Court, consolidation with the instant action would be improper because the issues in each action are distinct. Maxwell's argument that there is "substantial overlap" between the instant case and the DJ action is baseless in view of the differences between the issues described more fully in

LIMITED's Opposition to Maxwell's Motion to Transfer (D.I. 18).[1]  *See, e.g.,* Opposition (D.I. 18) at 1-2, 14-16.

### A.    Maxwell's Motion Is Not Properly Before The Court

Maxwell filed its Motion on Friday, March 9, 2007, without having conferred with LIMITED as required by D. Del. LR 7.1.1. Accordingly, LIMITED respectfully urges that the Court not entertain Maxwell's Motion.

Maxwell's trial counsel emailed LIMITED's local and trial counsel on Thursday, March 8, 2007, at 9:48 p.m. eastern time to announce its intention to file its Motion and inquire into LIMITED's willingness to stipulate to a consolidation of the cases. *See* Declaration of Brian M. Gaff ("Gaff Declaration"), Ex. 1, filed concurrently herewith. On the next day (Friday, March 9) at 10:28 a.m. eastern time, LIMITED's trial counsel responded via email stating that it would discuss Maxwell's proposal with LIMITED and respond to Maxwell early the following week because LIMITED's local and trial counsel were all at or traveling to a law firm-wide annual weekend retreat and were therefore unavailable on that day. Gaff Declaration, Ex. 2.

Rather than waiting for the weekend to allow LIMITED's counsel to confer with its client and respond regarding the proposed stipulation, Maxwell filed its Motion on Friday, March 9 at approximately 8:00 p.m. eastern time. Accompanying the Motion was a certification from Maxwell's local counsel Karen E. Keller stating that as of the filing of the Motion "we have not heard back from Plaintiff as to their position." D.I. 30-2. This certification is puzzling, because the email record shows that Ms. Keller had read (or

---

[1]    Although LIMITED's Opposition to Maxwell's Motion to Transfer discusses the differences between the issues in the instant action and the San Diego action, the same reasoning applies here because the issues in the San Diego action are identical to the issues in the DJ action.

at least opened) LIMITED's Friday morning email responding to Maxwell's proposal at 10:33 a.m. (i.e., approximately five minutes after it was sent). Gaff Declaration, Ex. 3

After filing its Motion, Maxwell's trial counsel then sent an email that (i) included the specious offer to withdraw the Motion in return for LIMITED agreeing to the substance of the Motion, that is, for LIMITED to agree to the consolidation of the cases, and (ii) characterized LIMITED's Friday morning response as indicative of an "unwillingness to meet and confer in a timely manner." Gaff Declaration, Ex. 4. Maxwell's hyperbole is unwarranted. LIMITED's counsel's request to confer with its client regarding Maxwell's proposal and respond when the litigation team returned from its annual retreat was reasonable and proper and would not have prejudiced Maxwell. Professional courtesy would have dictated allowing LIMITED the weekend to consider Maxwell's proposal, especially in view of the significant time difference between the east coast of the United States and LIMITED's location in South Korea. Maxwell's timing of the filing of its Motion is a knee-jerk reaction to LIMITED's earlier filing of a previously prepared Sur-Reply (D.I. 28, 29). Indeed, Maxwell's trial counsel managed to include a derisive reference to this Sur-Reply in his email.[2] Gaff Declaration, Ex. 4.

This is not the first time in this action that Maxwell has evaded the requirements of D. Del. LR 7.1.1. Indeed, as described in LIMITED's Opposition to Maxwell's Motion to Transfer (D.I. 18 at 1) and as set forth in an exchange of letters between local counsel,[3] Maxwell also failed to engage in a meet and confer before filing its Motion to

---

[2]    Maxwell's claim that LIMITED failed to include a D. Del. LR 7.1.1 certification in its Motion for Leave to File a Sur-Reply (D.I. 28) is without merit. The issues addressed in the Sur-Reply relate to the issues in the underlying briefing (D.I. 13, 23, and 24). Counsel for the parties discussed Maxwell's Motion to Transfer (D.I. 12) on February 8, 2007 – two days after Maxwell filed its motion.

[3]    Gaff Declaration, Exs. 5, 6.

7

Transfer (D.I. 12) and also extended the same hollow offer to withdraw its improperly filed motion only if LIMITED agreed to the substance of the motion.

Maxwell's behavior clearly violates both the spirit and the letter of D. Del. LR 7.1.1. It is entirely inappropriate to file a motion without a prior meet and confer to narrow issues and then offer the respondent the "option" of withdrawing the motion only if the respondent agrees to its substance. Maxwell's reliance[4] on a statement in its Answer (D.I. 7, ¶ 5) as somehow satisfying the meet and confer requirement is misplaced. A unilateral statement in a pleading is not a substitute for a two-way conversation. Maxwell's conduct has needlessly complicated and lengthened the motion practice in this action, thereby squandering both the Court's and the parties' resources. Accordingly, LIMITED respectfully requests that this Court not entertain Maxwell's Motion.

**B.     The Case That Maxwell Seeks to Consolidate With The Instant Action Is Not Yet Before This Court**

On January 18, 2007 LIMITED and its Delaware parent company NessCap, Inc. filed – but deliberately did not serve – their declaratory judgment action in this Court. Notwithstanding this lack of service, Maxwell filed an Answer and Counterclaims on March 8, 2007 (DJ action D.I. 4). Maxwell's premature filing is a transparent attempt to hijack a dormant DJ action away from the plaintiffs and use it to bolster its pending Motion to Transfer (D.I. 12). Maxwell's filing unnecessarily complicates the litigation between the parties.

LIMITED and its parent company intended to terminate their DJ action by withdrawing their complaint, but Maxwell has refused to cooperate in any equitable way.

---

[4]    Gaff Declaration, Ex. 6 at 1; Maxwell's Reply (D.I. 24) at 15 n.6.

Indeed, Maxwell conditioned withdrawal of the DJ action on LIMITED's withdrawal of its Opposition to Maxwell's Motion to Transfer (D.I. 18) in the instant, unrelated case. Maxwell's insistence on holding the efficient termination of the DJ action hostage to LIMITED's capitulation in an unrelated case is wholly unreasonable.

As described in LIMITED's Opposition to Maxwell's Motion to Transfer (D.I. 18 at 6), LIMITED and its parent company filed the DJ action with the intent of pursuing it in a forum where the parties were subject to jurisdiction only if the San Diego District Court dismissed the litigation between the parties pending there in response to motions filed pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(5). The San Diego action and the DJ action concern the same issues, which are distinct from the issues in the instant action.

On March 13, the San Diego District Court ruled that the case there would continue. Gaff Declaration, Ex. 7. In view of the ruling in San Diego, and to facilitate termination of the DJ action, LIMITED and its parent company sought to terminate the DJ action and, on March 15, 2007, offered to withdraw their complaint in return for Maxwell withdrawing its answer, counterclaims, and motion to consolidate. Gaff Declaration, Ex. 8. Maxwell refused this simple proposal. Instead, Maxwell complicated matters by requiring that (i) LIMITED's counsel accept service on behalf of South Korea-based LIMITED, and (ii) LIMITED withdraw its Opposition to Maxwell's Motion to Transfer the instant, unrelated case. Gaff Declaration, Ex. 9. In view of LIMITED's earlier offer to drop its objections to Maxwell's insufficient service of process on LIMITED – an offer that Maxwell rejected last December – LIMITED's counsel agreed to accept service but did not consent to withdraw its opposition. Gaff Declaration, Ex. 10.

Paradoxically, Maxwell did not agree to this reasonable compromise.    Gaff Declaration, Ex. 11.   Instead, Maxwell insists on linking the termination of the DJ action to the instant, unrelated action.   Maxwell's concern about the DJ action "clogging" this Court's docket[5] is belied by its unwillingness to permit the quick termination of that case, thereby requiring the expenditure of the Court's and the parties' resources to brief and consider a superfluous motion.

The importance of a plaintiff's compliance with Fed. R. Civ. P. 4 cannot be overstated.  Indeed, effective service of process is a requirement for proceeding further in a case.  *Lampe v. Xouth, Inc.*, 952 F.2d 697, 701 (3rd Cir. 1991).   The Court obtains personal jurisdiction over the parties when the complaint and summons are properly served on the defendant.  *Lampe*, 952 F.2d 700-01; *accord Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 569 (3rd Cir. 1996).  Absent a request from LIMITED and its parent company in compliance with the exacting requirements of Fed. R. Civ. P. 4(d), there can be no waiver of service and "a plaintiff can only effect proper service by personally serving the defendant as provided in the Federal Rules of Civil Procedure."  *Sampath v. Concurrent Technologies Corp.*, 227 F.R.D. 399, 401 (W.D. Pa. 2005).

Because LIMITED and its parent company did not serve their summons and complaint in the DJ action pursuant to Fed. R. Civ. P. 4, and because they did not request a waiver of service pursuant to Fed. R. Civ. P. 4(d), the DJ action has remained in an inchoate state, notwithstanding Maxwell's filing of an Answer and Counterclaims or any cross filings between the instant case and the DJ action.  Simply put, there can be no

---

[5]    *See* Maxwell's Reply (D.I. 24) at 14.

consolidation of the instant case with the DJ action because the latter is not before this Court.

As a result of the March 13 ruling in San Diego, the issues raised in the DJ action will be litigated in the San Diego District Court. Indeed, LIMITED's parent company has already answered Maxwell's San Diego complaint and counterclaimed for declaratory judgments of invalidity and noninfringement. LIMITED and its parent company, therefore, recognize that pursuing the DJ action no longer serves any purpose. Maxwell's attempt to take control of the DJ action by prematurely filing an Answer and Counterclaims and by refusing to allow the simple termination of that case only serves to waste private and judicial resources. These procedural shenanigans on Maxwell's part should not be countenanced. Accordingly, LIMITED respectfully urges this Court to deny Maxwell's Motion.

## V.    **CONCLUSION**

Maxwell has pointlessly complicated the litigation between the parties and frustrated the efficient termination of a case assigned to this Court. In view of the March 13 ruling of the San Diego District Court and LIMITED's and its parent company's desire to drop their DJ action against Maxwell, the motion at bar serves no purpose other than to squander the resources of all involved. Indeed, had Maxwell taken the time to meet and confer as required by D. Del. LR 7.1.1, it is likely that it could have avoided filing its Motion in view of LIMITED's and its parent's interest in terminating the DJ action. For the above reasons, LIMITED respectfully urges that the Court not entertain or, in the alternative, deny Maxwell's Motion to Consolidate this action with the non-pending DJ action.

Dated: March 23, 2007                Respectfully submitted,

                                     EDWARDS ANGELL PALMER & DODGE LLP


                                     Denise Seastone Kraft (DE No. 2778)
                                     919 North Market Street
                                     Suite 1500
                                     Wilmington, DE  19801
                                     (302) 425-7106
                                     (888) 325-9741 (fax)

                                     *Attorneys for NessCap Co., Ltd.*

**OF COUNSEL:**

George W. Neuner (*Of the Massachusetts Bar*)
Brian M. Gaff (*Of the Massachusetts Bar*)
EDWARDS ANGELL PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA 02199-7613
(617) 439-4444
(617) 439-4170 (fax)

# Exhibit A

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF DELAWARE

| | |
|---|---|
| NESSCAP CO., LTD.,<br><br>          Plaintiff,<br><br>     v.<br><br>MAXWELL TECHNOLOGIES, INC.<br><br>        Defendant. | JURY TRIAL DEMANDED<br><br>Civil Action No.: 1:06-cv-00764-GMS |
| NESSCAP CO., LTD. and NESSCAP, INC.,<br><br>         Plaintiffs,<br><br>     v.<br><br>MAXWELL TECHNOLOGIES, INC.<br><br>        Defendant. | JURY TRIAL DEMANDED<br><br>Civil Action No.: 1:07-cv-00035-GMS |

## DECLARATION OF BRIAN M. GAFF

I, Brian M. Gaff, hereby declare and state as follows:

1.    I am associated with the law firm of Edwards Angell Palmer & Dodge LLP in Boston, Massachusetts, which represents Plaintiff NessCap Co., Ltd. in this action.

2.    I am a member in good standing of the bars of the Commonwealth of Massachusetts and the States of California, New York, and New Hampshire.

3.    I am admitted *pro hac vice* before this Court.

4.    Attached as Exhibit 1 to this Declaration is a true and accurate copy of an email from Brian M. Kramer sent on March 8, 2007, at 9:48 p.m. EDT.

5.    Attached as Exhibit 2 to this Declaration is a true and accurate copy of an email from Brian M. Gaff sent on March 9, 2007, at 10:28 a.m. EDT.

6.    Attached as Exhibit 3 to this Declaration is a true and accurate copy of an email from Karen E. Keller sent on March 9, 2007, at 10:33 a.m. EDT.

7.    Attached as Exhibit 4 to this Declaration is a true and accurate copy of an email from Brian M. Kramer sent on March 9, 2007, at 8:09 p.m. EDT.

8.    Attached as Exhibit 5 to this Declaration is a true and accurate copy of a letter dated February 7, 2007 from Denise Seastone Kraft sent to Josy W. Ingersoll and Karen E. Keller.

9.    Attached as Exhibit 6 to this Declaration is a true and accurate copy of a letter dated February 8, 2007 from Karen E. Keller sent to Denise Seastone Kraft.

10.    Attached as Exhibit 7 to this Declaration is a true and accurate copy of an order (D.I. 59) issued on March 13, 2007 by Judge John A. Huston in case no. 3:06-cv-02311-JAH-BLM now pending in U.S. District Court for the Southern District of California in San Diego.

11.    Attached as Exhibit 8 to this Declaration is a true and accurate copy of a letter dated March 15, 2007 from Brian M. Gaff sent to Brian M. Kramer.

12.    Attached as Exhibit 9 to this Declaration is a true and accurate copy of a letter dated March 15, 2007 from Brian M. Kramer sent to Brian M. Gaff.

13.    Attached as Exhibit 10 to this Declaration is a true and accurate copy of a letter dated March 16, 2007 from Brian M. Gaff sent to Brian M. Kramer.

14.    Attached as Exhibit 11 to this Declaration is a true and accurate copy of a letter dated March 16, 2007 from Brian M. Kramer sent to Brian M. Gaff.

I declare under penalty of perjury under the laws of the United States of America and State of Delaware that the foregoing is true and correct and that this declaration was executed on this 23rd day of March, 2007.

BRIAN M. GAFF

BOS2_598838.1

**EXHIBIT 1**

**From:** Kramer, Brian M. [BMKramer@mofo.com]
**Sent:** Thursday, March 08, 2007 9:48 PM
**To:** Neuner, George; Gaff, Brian; Kraft, Denise; Reed, John
**Cc:** Doyle, David C.; Acker, Eric M.; kkeller@ycst.com; jingersoll@ycst.com; jshaw@ycst.com
**Subject:** NessCap v. Maxwell, C.A. Nos. 06-0674-GMS, 07-0035-GMS -- Motion to Consolidate

George, Brian, Denise, or John:

Maxwell intends to file a short motion to consolidate the second Delaware action (CA No. No. 07-0035-GMS) with the first Delaware action (No. 06-0674-GMS).  Will you agree to a stipulation consolidating the two cases?  As you know from Maxwell's motion to transfer, the two cases have overlapping parties, witnesses, and technology.  I am available this evening and all day tomorrow to discuss this.

Brian

Brian M. Kramer
Morrison & Foerster LLP
12531 High Bluff Drive, Suite 100
San Diego, CA  92130
Phone:  (858) 314-5415
Fax:  (858) 720-5125
email:  BMKramer@mofo.com

===================================================================

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

===================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.
===================================================================

**EXHIBIT 2**

**From:** Gaff, Brian
**Sent:** Friday, March 09, 2007 10:28 AM
**To:** 'Kramer, Brian M.'
**Cc:** Neuner, George; Chung, Huhnsik; Kraft, Denise; Doyle, David C.; Acker, Eric M.;
kkeller@ycst.com; jingersoll@ycst.com; jshaw@ycst.com
**Subject:** RE: NessCap v. Maxwell, C.A. Nos. 06-0674-GMS, 07-0035-GMS -- Motion to Consolidate
Brian:

Thanks for your email.  We are all at or on our way to our annual off-site department retreats, so we're unable to discuss this with you today.  We will discuss your proposal with our client and contact you early next week to confer on this matter.


Regards,

Brian M. Gaff
Edwards Angell Palmer & Dodge LLP
101 Federal Street
Boston, MA  02110-1810
617-517-5597 fax 888-325-9725
bgaff@eapdlaw.com

**EXHIBIT 3**

**From:**        Keller, Karen [kkeller@ycst.com]
**To:**          Gaff, Brian
**Sent:**        Friday, March 09, 2007 10:33 AM
**Subject:**     Read: RE: NessCap v. Maxwell, C.A. Nos. 06-0674-GMS, 07-0035-GMS -- Motion to
                 Consolidate

Your message

    To:        kkeller@ycst.com
    Subject:

was read on 3/9/2007 10:33 AM.

1

**EXHIBIT 4**

**From:** Kramer, Brian M. [BMKramer@mofo.com]
**Sent:** Friday, March 09, 2007 8:09 PM
**To:** Gaff, Brian
**Cc:** Neuner, George; Chung, Huhnsik; Kraft, Denise; Doyle, David C.; Acker, Eric M.;
kkeller@ycst.com; jingersoll@ycst.com; jshaw@ycst.com
**Subject:** RE: NessCap v. Maxwell, C.A. Nos. 06-0674-GMS, 07-0035-GMS -- Motion to Consolidate
Brian:

If NessCap later agrees to consolidate the two Delaware actions, Maxwell will withdraw its motion. However, Maxwell cannot allow NessCap to delay the filing of the motion based on your unwillingness to meet and confer in a timely manner. Your claim that every member of your team is unavailable today is surprising in light of the fact that Nesscap just filed a motion in this case an hour ago. I would also note that your motion lacked a Rule 7.1.1 certification indicating that you even attempted a "meet and confer" prior to filing.

Brian Kramer

**EXHIBIT 5**

# EDWARDS ANGELL PALMER & DODGE LLP

919 North Market Street  Wilmington, DE 19801  302.777.7770  *fax* 302.777.7263  eapdlaw.com

Denise Seastone Kraft
302.425.7106
*fax* 888.325.9741
dkraft@eapdlaw.com

February 7, 2007

**Via Facsimile & Hand Delivery**

Josy W. Ingersoll, Esq.
Karen E. Keller, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street
Brandywine Building, 17th Floor
Wilmington, DE 19801

Re: *Nesscap Co., Ltd. V. Maxwell Technologies, Inc.*, Case No. 06-00764

Dear Ms. Ingersoll and Ms. Keller:

We are in receipt of Maxwell Technologies, Inc.'s Motion to Transfer NessCap Co., Ltd.'s Complaint for Patent Infringement ("Motion"), which was filed at 8:41 p.m. last night. The Motion contains a Local Rule 7.1.1 certification stating that counsel for Maxwell Technologies, Inc. ("Maxwell") made a "reasonable effort to reach agreement" with counsel for NessCap Co., Ltd. ("NessCap") on the matters set forth in the Motion. It is our position that, in fact, no reasonable effort was made to meet and confer regarding the filing of the Motion as only three and a half hours lapsed between the time local counsel for Maxwell Technologies, Inc. contacted local counsel for NessCap Co., Ltd. and informed us that they would be filing the motion. Such action violates the spirit, if not the letter, of Local Rule 7.1.1.

Under the circumstances, we invite you to withdraw the Motion and to thereafter engage in a reasonable effort to meet and confer, as required prior to filing such a non-dispositive Motion. We are generally available tomorrow and Friday to discuss the issues raised in the Motion. If Maxwell chooses not to follow Local Rule 7.1.1 and to make a reasonable effort to meet and confer in an effort to reach agreement, then NessCap reserves all rights to take any necessary action to address the non-compliance with Delaware District Court Local Rule 7.1.1.

Very truly yours,

Denise Seastone Kraft

DSK/rrj

WLM_507899_1.DOC/DKRAFT

EDWARDS ANGELL PALMER&DODGE LLP

Josy W. Ingersoll, Esq.
Karen E. Keller, Esq.
February 7, 2007
Page 2


cc:    George W. Neuner, Esq.
       Brian M. Gaff, Esq.
       David C. Doyle, Esq.
       Brian M. Kramer, Esq.

**EXHIBIT 6**

# YOUNG CONAWAY STARGATT & TAYLOR, LLP

BEN T. CASTLE
SHELDON N. SANDLER
RICHARD A. LEVINE
RICHARD A. ZAPPA
FREDERICK W. IOBST
RICHARD H. MORSE
DAVID C. MCBRIDE
JOSEPH M. NICHOLSON
CRAIG A. KARSNITZ
BARRY M. WILLOUGHBY
JOSY W. INGERSOLL
ANTHONY G. FLYNN
JEROME K. GROSSMAN
EUGENE A. DIPRINZIO
JAMES L. PATTON, JR
ROBERT L. THOMAS
WILLIAM D. JOHNSTON
TIMOTHY J. SNYDER
BRUCE L. SILVERSTEIN
WILLIAM W. BOWSER
LARRY J. TARABICOS
RICHARD A. DILIBERTO, JR
MELANIE K. SHARP
CASSANDRA F. ROBERTS
RICHARD J.A. POPPER
TERESA A. CHEEK
NEILLI MULLEN WALSH

JANET Z. CHARLTON
ROBERT S. BRADY
JOEL A. WAITE
BRENT C. SHAFFER
DANIEL P. JOHNSON
CRAIG D. GREAR
TIMOTHY JAY HOUSEAL
MARTIN S. LESSNER
PAULINE K. MORGAN
C. BARR FLINN
NATALIE WOLF
LISA B. GOODMAN
JOHN W. SHAW
JAMES P. HUGHES, JR
EDWIN J. HARRON
MICHAEL R. NESTOR
MAUREEN D. LUKE
ROLIN P. BISSELL
SCOTT A. HOLT
JOHN T. DORSEY
M BLAKE CLEARY
CHRISTIAN DOUGLAS WRIGHT
DANIELLE GIBBS
JOHN J. PASCHETTO
NORMAN M. POWELL
ELENA C. NORMAN

JOSEPH M. BARRY
SEAN M. BEACH
SANJAY BHATNAGAR
DONALD J. BOWMAN, JR
TIMOTHY P. CAIRNS
JEFFREY T. CASTELLANO
KARA HAMMOND COYLE
KRISTEN SALVATORE DEPALMA
MARGARET M. DIBIANCA
MARY F. DUGAN
ERIN EDWARDS
KENNETH J. ENOS
IAN S. FREDERICKS
JAMES J. GALLAGHER
SEAN T. GREECHER
STEPHANIE L. HANSEN
DAWN M. JONES
KAREN E. KELLER
JENNIFER M. KINKUS
EDWARD J. KOSMOWSKI
JOHN C. KUFFEL
KAREN LANTZ
TIMOTHY E. LENCKEKK

ANDREW A. LUNDGREN
MATTHEW B. LUNN
JOSEPH A MALFITANO
ADRIA B. MARTINELLI
MICHAEL W. MCDERMOTT
MARIBETH L. MINELLA
EDMON L. MORTON
D. FON MUTTAMARA-WALKER
JENNIFER R. NOEL
ADAM W. POFF
SETH J. REIDENBERG
SARA BETH A. REYBURN
CHERYL A. SANTANIELLO
(NJ & PA ONLY)
MICHELE SHERRETTA
MONTE T. SQUIRE
MICHAEL P. STAFFORD
CHAD S.C. STOVER
JOHN E. TRACEY
TRAVIS N. TURNER
MARGARET B. WHITEMAN
SHARON M. ZIEG

SPECIAL COUNSEL
JOHN D. MCLAUGHLIN, JR.
KAREN L. PASCALE
PATRICIA A. WIDDOSS

SENIOR COUNSEL
CURTIS J. CROWTHER

OF COUNSEL
BRUCE M. STARGATT
STUART B. YOUNG
EDWARD B. MAXWELL, 2ND

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(800) 253-2234 (DE ONLY)
FAX: (302) 571-1253

110 WEST PINE STREET
P.O. BOX 594
GEORGETOWN, DELAWARE 19947
(302) 856-3571
(800) 255-2234 (DE ONLY)
FAX: (302) 856-9338

WWW.YOUNGCONAWAY.COM

DIRECT DIAL: (302) 571-6554
DIRECT FAX: (302) 576-3467
kkeller@ycst.com

February 8, 2007

## BY FACSIMILE

Denise Seastone Kraft, Esq.
Edwards Angell Palmer & Dodge LLP
919 North Market Street
Wilmington, DE 19801

Re: Nesscap Co., Ltd. v. Maxwell Techs., Inc. - C.A. No. 06-764

Dear Ms. Kraft:

I write in response to your letter dated February 7, 2007.

I respectfully disagree that Maxwell has "chosen not to follow" Local Rule 7.1.1 when it filed its motion to transfer. NessCap has known since at least January 3, 2007, that Maxwell was filing a motion to transfer this case to the United States District Court for the Southern District of California. (*See* D.I. 7 at 2 ("[V]enue should be transferred to the Southern District of California pursuant to 28 U.S.C. § 1404(a).").) Throughout all interactions between Maxwell and NessCap over the past month, NessCap has never indicated that it would agree to transfer the case to the Southern District of California. In fact, instead of filing its compulsory counterclaims in the Southern District of California regarding the patents-at-issue in the first-filed San Diego action, NessCap filed its compulsory counterclaims as a new declaratory judgment action in Delaware.

Tuesday, I told you on the phone that Maxwell was filing the motion. You told me that I should instead call out-of-state counsel, Mr. Gaff. I called out-of-state counsel, Mr. Brian Gaff, immediately, and he did not answer my call or return my message. Maxwell thereafter filed its brief, having satisfied its obligations under Rule 7.1.1, to the extent it was required to do so.

# YOUNG CONAWAY STARGATT & TAYLOR, LLP

Denise Seastone Kraft, Esq.
February 8, 2007
Page 2

To the extent that NessCap is willing to continue discussions about Maxwell's motion to transfer, Maxwell is, of course, open to further discussions. If NessCap agrees to a transfer to the Southern District of California, Maxwell will immediately withdraw its motion.

Very truly yours,

Karen E. Keller

cc:    Brian M. Gaff, Esq. (by facsimile)
       Brian M. Kramer, Esq. (by facsimile)
       David C. Doyle, Esq. (by facsimile)
       Josy W. Ingersoll, Esq.

**EXHIBIT 7**

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| MAXWELL TECHNOLOGIES, INC., ) | Civil No. 06cv2311 JAH (BLM) |
| Plaintiff, ) | **ORDER GRANTING IN PART AND** |
| v. ) | **DENYING IN PART** |
| ) | **DEFENDANTS' MOTIONS TO** |
| NESSCAP, INC., and NESSCAP CO., ) | **DISMISS [Doc. Nos. 25,26]** |
| LTD., ) | |
| Defendants. ) | |

**BACKGROUND**

On October 17, 2006, Plaintiff, Maxwell Technologies, Inc., ("Maxwell") filed a complaint for patent infringement and filed a motion for preliminary injunction on October 18, 2006. On November 2, 2006, Plaintiff filed an amended complaint alleging patent infringement of U.S. Patent No. 6,525,924 and U.S. Patent No. 6,631,074. Nesscap, Inc. and Nesscap Co., Ltd ("Nesscap, Co.") were named as defendants. Plaintiff also filed a motion for preliminary injunction on November 2, 2006. The motion was set for hearing on November 30, 2006, but was continued upon Defendants' application. The hearing on the preliminary injunction is set for March 8, 2007. Defendants filed motions to dismiss on November 9, 2006, which were set for hearing on January 18, 2007. The motions were taken under submission without oral argument. After a thorough review of the parties submissions, the Court GRANTS IN PART AND DENIES IN PART Defendants' motions to dismiss.

## DISCUSSION

Defendant Nesscap, Inc. seeks an order dismissing the action against it for lack of personal jurisdiction and insufficient service of process. Defendant Nesscap, Co. seeks dismissal of the amended complaint for insufficient service of process.

### I.  Personal Jurisdiction

### A.  Legal Standard

Under Fed. R. Civ. P. 12(b)(2), a court may dismiss a case for "lack of jurisdiction over the person."  Plaintiff bears the burden of establishing personal jurisdiction over a party. Mattel, Inc. v. Greiner and Hausser, GmbH, 354 F.3d 857, 860 (9th Cir. 2003) (citing Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1128 (9th Cir. 2003). When the court decides the issue of personal jurisdiction on the pleadings without oral argument, as here, a plaintiff meets this burden by making a prima facie showing of jurisdiction. Id.

Federal Circuit law governs personal jurisdiction in patent infringement cases. Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1348 (Fed. Cir. 2001). "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process." 3D Systems, Inc. v. Asrotech Laboratories, Inc., 160 F.3d 1373, 1376 (Fed. Cir. 1998). California's long-arm statute permits it to exercise jurisdiction to the extent permitted by the Due Process Clause of the Constitution. Cal. Code of Civ. Proc. § 410.10. Under due process analysis, the Court may only exercise jurisdiction in accord with "traditional notions of fair play and substantial justice," thus the nonresident defendant is required to have "certain minimum contacts" with the forum state in order for jurisdiction to be proper. See Mattel, 354 F.3d at 863. (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Personal jurisdiction may be either general or specific. Gator.com Corp. v. L.L. Bean, Inc., 341 F.3d 1072, 1076 (9th Cir. 2003) (citing Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998)); see also LSI Industries, Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed.Cir. 2000).  General jurisdiction exists when a defendant maintains

1  "substantial" or "continuous and systematic" contacts with the forum state, even if the action

2  is unrelated to those contacts. Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082

3  (9th Cir. 2000) (citing Helicopteros Nationales de Colombia, S.A. v. Hall, 466 U.S. 408, 415

4  (1984). Specific jurisdiction exists when the claims "arise out of" or "relates to" the defendants

5  contacts with the forum. LSI Industries, Inc., 232 F.3d at 1375 (citing Burger King Corp. v.

6  Rudzewicz, 471 U.S. 462, 472-72 (1985). The Federal Circuit has developed a test for

7  determining the existence of specific jurisdiction. See Akro Corp. v. Luker, 435 F.3d 1541

8  (Fed.Cir. 1995). Specific jurisdiction exists if (1) the defendant has "purposefully directed his

9  activities at the residents" of the forum state; (2) the cause of action arises from or relates to

10  the defendant's activities in the forum state; and (3) the assertion of jurisdiction is reasonable

11  and fair. Id.

12  **B. Analysis**

13       Defendant Nesscap, Inc., a Delaware corporation is registered to do business in New

14  York state. Kim Decl. ¶ 2. It is the parent corporation of Nesscap, Co. which is located in

15  South Korea and organized under Korean law. Id. ¶ 3. Defendant Nesscap, Inc. argues

16  Maxwell has not alleged and cannot alleged Nesscap, Inc. has or had any presence within

17  California that was substantial, continuous or systematic. Additionally, Nesscap, Inc. argues

18  its only activities in California are raising investment capital and introductory meetings.

19  Defendant maintains it is not engaged in making, using, and/or selling or offering for sale in

20  California the accused products. Nesscap, Inc. further argues it would be unreasonable to

21  exercise jurisdiction over it, because it has the heavy burden of litigating this case in a state

22  where it has no presence, the forum has no interest in adjudicating the dispute involving a non-

23  resident, and all the witnesses and evidence are outside California.

24       Plaintiff argues the evidence establishes sufficient contacts with California and Nesscap,

25  Inc.'s assertion that its sole activity is raising capital is disproved by pre-litigation admissions

26  and documents. Plaintiff further argues Nesscap Co. contacts are attributable to Nesscap, Inc.,

27  because they are in reality one entity.

28  //

1    **1. Purposely Directed Activities at Forum**

2    **a. Nesscap, Inc.'s Role in Manufacturing, Development and Sales**

3    Defendant maintains it is only engaged in raising capital and is not engaged in the

4    manufacture, development or sales of the alleged infringing ultracapacitors. Relying on the

5    discussion in Oakley, Inc. v. Jofa AB, 287 F.Supp.2d 1111 (C.D.Cal. 2003), Plaintiff argues

6    Nesscap, Inc.'s assertion it is merely an investment capital raising company is disproved by its

7    own admissions. In Oakley, Inc., the plaintiff submitted evidence to rebut the defendant's

8    assertion that it was merely a holding company. Id. at 114. The defendant attacked the

9    evidence by offering declarations. The court found that "in as much as the[se] attacks create

10   factual disputes, the [c]ourt must resolve them. . .in [the] Plaintiff's favor." Id.

11   Here, Plaintiff offers statements in Defendant's prospectus, corporate filings and press

12   releases to demonstrate Nesscap, Inc. is involved in developing, manufacturing and selling the

13   infringing ultracapacitors. In the prospectus, Nesscap, Inc. describes itself as a "leading

14   developer and manufacturer of ultracapacitors." Parker, Decl., Exh. A at 3. Additionally, on

15   its website, www.nesscap.com, Nesscap, Inc. states it participates in the "research, development,

16   production and sales of the family of capacitor products including the award winning

17   ultracapacitor. . ." Parker Decl., Exh. G at 25. Nesscap, Inc.'s prospectus also provides

18   investors with it revenues from the sale of ultracapacitors. Parker Decl., Exh. A at 4-7.

19   Furthermore, in the prospectus, Nesscap, Inc. described itself as "one of the four leading

20   developers and manufacturers of ultracapacitors in the world." Id. at 3.

21   Plaintiff further demonstrates Dr. Sun-Wook Kim, Nesscap, Inc.'s President, described

22   its business as an "Energy Device Company" in its filing of corporate taxes. Parker Decl., Exh.

23   D at 15. Additionally, in a press release, Nesscap, Inc. states it is "a privately held company

24   recognized as a global leader in ultracapacitor technology, product development, sales and

25   manufacturing." Parker Decl., Exh. G at 26.

26   Defendant Nesscap, Inc. argues Plaintiff mischaracterizes the documentary evidence and

27   ignores passages within the cited documents that distinguish Nesscap, Inc. from Nesscap, Ltd.

28   In support, Defendant submits the statement in the prospectus that it "owns 100% of its

4                                                                      06cv2311

1   Korean counterpart, Nesscap Co." and explains its factory is located in Korea.  Parker Decl.,

2   Exh. A at 3, 7.  Defendant further argues Nesscap, Inc. was established in 2004, 3 years after

3   the creation of Nesscap, Co., Ltd, which demonstrates Nesscap, Co. was engaged in

4   ultracapacitor manufacturing long before the creation of Nesscap, Inc.  Nesscap, Inc. contends

5   it was formed to raise capital and sites to the prospectus and Kim's declaration.  Defendant

6   further argues the use of "Nesscap" as a shorthand in the prospectus is insufficient to blur

7   corporate distinctness.[1]

8        Contrary to Defendant's assertion, the prospectus does not clearly distinguish between

9   Nesscap, Inc. and Nesscap. Co.  Besides the information about Nesscap Co. as a subsidiary,

10  there is no information that Nesscap Co. is the sole developer of ultracapacitors while Nesscap

11  Inc. merely raises capital.  To the extent Defendant argues Nesscap Co. was engaged in

12  ultracapacitor manufacturing before the creation of Nesscap Inc., this information, at most,

13  creates a factual dispute, which at this time must be resolved in favor of Plaintiff.  See Harris

14  Rutsky & Co. Ins. Services, 328 F.3d at 1128.  As such, the Court finds Plaintiff sufficiently

15  demonstrates Defendant Nesscap, Inc. is involved in the manufacturing, development and sales

16  of ultracapacitors.

17  **ii.  Nesscap, Inc.'s Activities in California**

18        Plaintiff maintains Nesscap sold infringing ultracapacitors to DIG Corp. in Vista and sent

19  price quotes to ISE Corp. in Poway.  Thompson Declaration ¶¶ 3 - 5; Balanson Decl. ¶ 6.  It is

20  unclear from the evidence submitted whether Nesscap, Inc. or Nesscap, Co. sold the

21  ultracapacitors and sent price quotes in these two instances.  Plaintiff argues these actions can

22  be attributed to Nesscap, Inc. given the prima facie evidence of Nesscap, Inc.'s role in sales and

23  marketing of infringing ultracapacitors.  Defendant argues there is no evidence that Nesscap,

24  Inc. engaged in the activities.  The Court agrees it is a reasonable inference that Nesscap, Inc.

25  was involved in the sale and price quotes in California based upon its role in the sales of

26

27

28        [1]Because the evidence demonstrates Nesscap, Inc., itself, engages in the development and sales of
ultracapacitors, the Court does not reach the issue of alter-ego status in the personal jurisdiction discussion.

1  ultracapacitors.[2]  Generally, the sale of its goods in the forum state is sufficient to assert

2  jurisdiction over a party. See World-Wide Volkswagen Corp v. Woodson, 444 U.S. 286, 297-

3  98 (1980); IP Innovation, LLC v. RealNetworks, Inc., 310 F.Supp.2d 1209, 1212 (W.D.Wash.

4  2004) (finding single sale was sufficient to establish minimum contacts to allow exercise of

5  specific jurisdiction in case arising out of the sale). The Court finds Nesscap, Inc. purposefully

6  directed its activities, the sales of the ultracapacitors to the residents of California.

7  **2. Arising Out of Defendant's Activities**

8      Plaintiff alleges Defendant infringed on its patents, nos. '924 and '074, by "making,

9  using and/or selling or offering for sale products embodying" the patented products. FAC at 2,

10  3. The cause of action clearly arises out of Defendant Nesscap, Inc.'s act of selling and offering

11  for sale infringing products in California.

12  **3. Reasonable and Fair**

13      The court considers several factors in determining the reasonableness of exercising

14  personal jurisdiction, including (1) the burden on the defendant, (2) the interests of the forum

15  state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest

16  in obtaining the most efficient resolution of controversies, and (5) the shared interest of the

17  several states in furthering fundamental substantive social policies. Inamed Corp. v. Kuzmak,

18  249 F.3d 1356, 1363 (Fed. Cir. 2001) (citing Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480

19  U.S. 102, 113, 107 (1987)).

20      Defendant argues all relevant documents and materials connected to the accused product

21  are outside California, because the product is manufactured in Korea.  It further argues

22  California has no interest in adjudicating this case involving a non-resident of California.

23

24  [2]Plaintiff further relies upon the "stream of commerce" theory in support of jurisdiction. Pursuant to
    this theory, "the defendant's contacts are the result of establishing a distribution network in the forum state for

25  the sale of defendant's products." Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424 (Fed.Cir.
    1996). Plaintiff argues Nesscap, Inc.'s relationship with U.S. Distributor, Digi-Key is evidence of Nesscap

26  Inc.'s contacts with California. Additionally, Plaintiff argues Nesscap, Inc.'s introductory meetings establish
    specific jurisdiction, because its stated purpose in raising capital is to expand its infringing sales in the United

27  States.  In support, Plaintiff relies upon the statement in the prospectus that it is seeking capital to "establish a
    world-class executive and sales team in the United States." Parker, Decl., Exh. A at 8. Because the Court finds

28  sufficient contacts with the forum state based upon the sales and quotes in California, it need not address these
    additional grounds.

1    Nesscap, Inc. also argues all witnesses and evidence are located outside California. It maintains

2    the only connection is the location of Maxwell's headquarters.

3         Plaintiff argues Maxwell's and California's interest in litigating the case in California

4    outweigh any burden on Nesscap, Inc. It maintains California has a strong interest in providing

5    its residents a forum for redressing injuries by non-residents and has an interest in discouraging

6    injuries incurring within the state. Plaintiff further argues Defendants connections to California

7    are very strong.

8         Because the pertinent witnesses and evidence, and materials relevant to the accused

9    product are located outside California, Defendant shows it will be burdensome to defend this

10   action in California. However, the Court finds Defendant fails to present a compelling case

11   these "considerations. . .render jurisdiction unreasonable."[3] Id. at 1363, 1364. Furthermore,

12   Defendant fails to demonstrate its burden clearly outweighs Plaintiff's and the forum state's

13   interest in adjudicating the case. Accordingly, the Court finds it has jurisdiction over Nesscap,

14   Inc.

15   **II. Insufficient Service**

16   **A. Nesscap, Inc.**

17        Defendant Nesscap, Inc. argues service of the summons and complaint did not comply

18   with Federal Rule of Civil Procedure 4 and seeks dismissal pursuant to Federal Rule of Civil

19   Procedure 12(b)(5). Defendant argues Plaintiff's service upon Nesscap, Inc.'s attorney in New

20   York is insufficient, because Rule 4(h)(1) requires service of process on an officer, managing or

21   general agent or other authorized agent. Defendant further argues service of process did not

22   comply with Rule 4(e)(1), because it did not comply with California or New York law.

23   California requires service of process on foreign corporations to any natural person designated

24   by it as agent for the service of process. Defendant argues Maxwell did not serve the agent

25   designated for service of process. New York requires service of process on a foreign corporation

26   on the secretary of state, personally. It is undisputed Maxwell did not serve the New York

27

28        [3]These convenience issues may be better addressed in a request for change of venue. See Burger King
     Corp. v. Rudzewicz, 417 U.S. 462, 477 (1985).

1    secretary of state.

2         Plaintiff maintains it has served Nesscap, Inc.'s registered agent for service of process in

3    Delaware, and therefore, Nesscap, Inc.'s motion to dismiss for insufficient service is moot.

4    Nesscap, Inc. does not respond to this argument or otherwise dispute the motion is now moot.

5    However, in its reply in support of its motion to dismiss, Nesscap, Co. states Nesscap, Inc.'s

6    registered agent was served in Delaware.

7         Because Plaintiff served Nesscap, Inc.'s designated agent in Delaware pursuant to Rule

8    4(h)(1), the motion to dismiss for insufficient service is DENIED as moot.

9    **B. Nesscap, Co.**

10        Defendant Nesscap, Co. seeks dismissal of the complaint pursuant to Federal Rule of

11   Civil Procedure 12(b)(5) for insufficient service of process.  Specifically, Nesscap, Co. argues

12   Plaintiff failed to comply with Rule 4 for service of process.

13   **1. Legal Standard**

14        Service upon a foreign corporation is governed by Federal Rule of Civil Procedure 4(h),

15   which states, in relevant part, "Unless otherwise provided by federal law, service upon a

16   domestic or foreign corporation. . .from which a waiver of service has not been obtained and

17   filed, shall be effected:"

18        (1) in a judicial district of the United States in the manner prescribed for
     individuals by subdivision (e)(1), or by delivering a copy of the summons and the
19        complaint to an officer, a managing or general agent, or to any other agent
     authorized by appointment or by law to receive service of process and, if the agent
20        is one authorized by statute to receive service and the statute so requires, by also
     mailing a copy to the defendant or

21        (2) in a place not within any judicial district of the United States in any manner
22        prescribed for individuals by subdivision (f) except personal delivery as provided
     in paragraph (2)(C)(I) thereof.
23   Fed.R.Civ.P. 4(h).

24        According to Rule 4(e)(1), service may be effected pursuant to the law of the state where

25   the district court is located or of the state where service is effected.  Fed.R.Civ.P. 4(e)(1).  Rule

26   4(f) governs service upon "individuals in a foreign country" and provides:

27

28        Unless otherwise provided by federal law, service upon an individual from whom
     a waiver has not been obtained and filed ... may be effected in a place not within

8                                                                06cv2311

1    any judicial district of the United States:

2    (1) by any internationally agreed means reasonably calculated to give notice, such
     as those means authorized by the Hague Convention of the Service Abroad of
3    Judicial and Extrajudicial Documents; or

4    (2) if there is no internationally agreed means of service or the applicable
     international agreement allows other means of service, provided that service is
5    reasonably calculated to give notice:

6            (A) in the manner prescribed by the law of the foreign country for service
     in that country in an action in any of its courts of general jurisdiction; or
7
8            (B) as directed by the foreign authority in response to a letter rogatory or
     a letter of request; or

9            (C) unless prohibited by the law of the foreign country, by

10                   (I) delivery to the individual personally of a copy of the summons
     and the complaint; or
11
                     (ii) any form of mail requiring a signed receipt, to be addressed and
12   dispatched by the clerk of the court to the party to be served; or

13   (3) by other means not prohibited by international agreement as may be directed
     by the Court.
14

15   Fed.R.Civ.P. 4(f).  As stated above, service upon a foreign corporation may not be effected

16   pursuant to Rule 4(f)(2)(C)(I).  See Fed.R.Civ.P. 4(h)(2).

17   **2. Analysis**

18        Defendant contends Plaintiff hand delivered the summons and complaint to the New

19   York office of Nesscap, Inc.'s attorney and did not provide a request to waive service.  Because

20   Nesscap, Co. is a foreign corporation located in South Korea, Defendant argues service on its

21   parent company is insufficient.  Defendant maintains it is separate and distinct from its parent

22   company Nesscap, Inc. and further argues service on a parent company does not constitute

23   service on a subsidiary even if the subsidiary were an alter-ego of the parent under California

24   law.

25        Plaintiff argues service on Nesscap, Inc.'s registered agent constitutes service on Nesscap,

26   Co., because they are actually one entity.  Maxwell further argues whether California law allows

27   service on an alter-ego is irrelevant, because it served Nesscap, Co. pursuant to the second part

28   of Rule 4(h)(1) which allows service by delivering a copy to the corporation's registered agent.

1   **a. Whether Service Must Comply with California Law**

2       Service of process upon a foreign corporation may be accomplished by three different

3   alternatives: (1) the law of the state where the district court is located pursuant to Rule 4(e)(1);

4   (2) by delivering a copy of the summons and complaint on an authorized agent in a judicial

5   district of the United States pursuant to Rule 4(h)(1); or (3) by an internationally agreed

6   method such as that provided by the Hague Convention pursuant to Rule 4(f)(1). <u>See</u> <u>SVC-</u>

7   <u>Napa, L.P. v. Strategy Resort Financing, Inc.</u>, 2006 WL 2374718 (N.D.Cal. 2006). Plaintiff

8   maintains it effected service pursuant to second part of Rule 4(h)(1) which allows service upon

9   an authorized agent. The language of the second part of Rule 4(h)(1) does not require

10  compliance with state law. As such, California's prohibition against service of the subsidiary

11  or the parent as service upon the other is not relevant to the issue before this Court.

12  **b. Whether Defendants are a Single-Entity**

13      Plaintiff maintains service upon Nesscap, Inc. is service upon Nesscap, Co., because

14  Nesscap, Inc. and Nesscap, Co. are in reality one entity. Service of process upon a subsidiary

15  or a parent corporation may equate to service upon the other when they are in actuality a single

16  entity. <u>See</u> <u>Hickory Travel Systems, Inc. v. TUI AG</u>, 213 F.R.D. 547, 553 (N.D.Cal. 2003)

17  (Plaintiff must demonstrate subsidiary is alter-ego of parent company for service upon

18  subsidiary to act as service upon parent); <u>see also</u> <u>Dymits v. American Brands, Inc.</u>, 1996 WL

19  751111 (N.D.Cal. 1996) (recognizing that a subsidiary and parent corporation may be treated

20  as a de facto agent for each other when they operate as a singly entity).

21      Plaintiff maintains there is no legitimate geographic distinction between the two entities,

22  they have a unified management team, they jointly engage in all business and technical pursuits

23  and the failure to treat them as one entity would result in fraud and injustice. Defendant

24  argues there is no evidence to suggest an alter-ego relationship between Nesscap, Inc. and

25  Nesscap, Co.

26      To find Nesscap, Co. is Nesscap, Inc.'s alter ego, Plaintiff must make a prima facie case

27  "(1) that there is such unity of interest and ownership that the separate personalities of [the two

28  entities] no longer exist and (2) that failure to disregard their separate identities would result

1  in fraud or injustice." <u>American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert</u>, 94 F.3d 586,

2  591 (9th Cir. 1996) (citations omitted).  The first prong requires a showing "that the parent

3  controls the subsidiary 'to such a degree as to render the latter the mere instrumentality of the

4  former.'" <u>Doe v. Unocal Corp.</u>, 248 F.3d 915, 926 (9th Cir. 2001) (citing <u>Calvert v. Huckins</u>,

5  875 F.Supp 674, 678 (E.D.Cal. 1995).

6  **I.  Unity of Interest and Ownership[4]**

7          In support of its argument that Nesscap, Inc. and Nesscap, Co. have no geographic

8  distinction, Maxwell relies upon a presentation Dr. Kim gave at two technical conferences

9  during which he provided written materials that list "Nesscap, Co. Ltd" on every page and states

10  the company has a United States headquarters.  Miller Decl., Exh. E. at 17.  It further relies

11  upon Dr. Kim's registration at a conference where he lists himself as a representative of

12  Nesscap, Inc., but provides a Korean number as his work telephone number.  Miller Decl., Ex.

13  C. at 6.  Plaintiff further maintains the two entities have a unified management team, because

14  the prospectus describes the management team that includes individuals who work for Nesscap,

15  Co., Nesscap, Inc., Ness, and Nesscap.  Parker Decl., Exh. A at 7-8.  Maxwell further argues Dr.

16  Kim is the only officer for Nesscap, Inc. and is the founder and Chairman of Nesscap, Co.  It

17  further relies upon Dr. Kim's discussions regarding Nesscap, Co. during an interview and at

18  technical conferences on the ultracapacitor technology, and a magazine article that lists Dr. Kim

19  as Nesscap, Co.'s founder and contains a photograph of Dr. Kim holding samples of the

20  infringing capacitors.  Parker Decl, Ex. F at 20.

21          In support of its argument that the two companies jointly engage in all business and

22  technical pursuits, Plaintiff relies upon the combined management team and the explanation

23  of its goals in the prospectus.  Maxwell also points to the two entities joint participation in

24  technical conferences.  At a conference held in San Diego in July 2006, Dr. Hyun Jin Song

25  discussed ultracapacitors in the automotive industry and provided materials that identified Dr.

26

27          [4]Plaintiff refers to its argument in support of finding alter-ego status in its opposition to Nesscap, Inc.'s
motion to dismiss for lack of personal jurisdiction.  As such, the references to Plaintiff's arguments herein are
28  taken from that portion of its opposition.  Likewise, Nesscap, Co. incorporates and relies upon Nesscap, Inc.'s
arguments opposing a finding of alter-ego status in its reply.

1    Song as an employee of Nesscap, Co. and an employee of Nesscap, Inc.  Balanson Decl, Exh.

2    B at 9, 10.  Plaintiff also points to G. Bickley Stevens's, a banker from Ardour Capital,

3    involvement with Nesscap, Co. and Nesscap, Inc. in issuing the prospectus.  Maxwell also

4    describes how both entities claim credit for an IEEE Spectrum Award.  In further support,

5    Plaintiff describes how both entities jointly proposed to enter a non-disclosure agreement with

6    Maxwell and utilized a single attorney who defined them collectively.

7        Nesscap, Co. argues the evidence establishes Nesscap, Inc. has no control over Nesscap,

8    Co.'s day-to-day operations and plays no role in the sales of Nesscap, Co.'s products.

9    Additionally, Defendant argues adopting Maxwell's argument regarding the language of the

10   prospectus would mean anytime a parent company and subsidiary refer to themselves using a

11   shorthand would blur corporate distinctness.  Defendant contends the registration at

12   conferences is insufficient to demonstrate the entities are alter egos, and it is not responsible

13   for the information contained in lists and programs maintained by conference organizers.

14   Defendant also argues the press release and unexecuted non-disclosure agreement are

15   insufficient to blur corporate distinctness, because the press release and agreement clearly

16   distinguish between the two entities.  Defendant maintains the prospectus lists only Dr. Kim

17   as part of the management of Nesscap, Inc. and having a role in Nesscap, Co. and one joint

18   member is insufficient to support the two companies are a single entity.  Defendant maintains

19   Dr. Kim plays no role in the day-to-day operations of Nesscap, Co.

20       The Court finds the evidence which consists primarily of statements in the prospectus

21   and at technical conferences fails to demonstrate such unity of the two entities or control of one

22   over the other. Although the evidence shows Nesscap, Inc. may be involved in the manufacture,

23   development and sales of ultracapacitors in addition to its capital raising duties, there is no

24   evidence submitted showing one company's control over the other company's daily operations.

25   Additionally, the common management team member does not support a finding Nesscap, Inc.

26   is an alter-ego of Nesscap, Co.  See United States v. Best Foods, 524 U.S. 51, 69 (1998)

27   ("[R]ecognition that the corporate personalities remain distinct has its corollary in the well

28   established principle of corporate law that directors and officers holding positions with a parent

1  and its subsidiary can and do 'change hats' to represent the two corporations separately, despite

2  their common ownership."). The evidence establishes Dr. Kim is Nesscap, Inc.'s sole executive,

3  and is chairman of Nesscap, Co., however, Plaintiffs present no evidence of his activities or

4  involvement in the operations of Nesscap, Co. The Court finds the evidence of Dr. Kim acting

5  as a representative of Nesscap, Co. at technical conferences is insufficient to demonstrate he is

6  involved with Nesscap, Co. daily operations. See Unocal Corp., 248 F.3d at 927 (" A parent

7  corporation may be directly involved in financing and macro-management of its subsidiaries,

8  however, without exposing itself to a charge that each subsidiary is merely its alter ego."). The

9  Court finds the evidence submitted is insufficient to support the two entities share "such unity

10 of interest and ownership that the separate personalities. . .no longer exist." American Tel. &

11 Tel. Co., 94 F.3d at 591.

12 **ii. Fraud and Injustice**

13     Because the Court finds Plaintiff fails to meet the first prong of the test for finding a

14 entity is the alter-ego of another, the Court need not address the fraud prong.

15 **c. Whether an Agency Relationship Exists**

16     In a footnote[5], Plaintiff argues the evidence set forth above establishes that Nesscap, Inc.

17 is Nesscap, Co.'s agent. It maintains that even if Nesscap, Inc. performs only fund-raising, it

18 does so solely on behalf of Nesscap, Co. and does so via a single individual who is the founder,

19 CEO and primary public spokesperson for the Korean entity.

20     Defendant argues Nesscap, Inc.'s activity is not an integral part of Nesscap, Co.'s

21 business. It also argues Nesscap, Co. operates independently of Nesscap, Inc. and Nesscap,

22 Inc.'s sole executive has no role in the day-to-day activities of Nesscap, Co. Defendant further

23 maintains Plaintiff fails to show Nesscap, Inc. would be unable to function properly without

24 Nesscap, Co.

25     "To satisfy the test for an agency relationship, Plaintiff must demonstrate the subsidiary

26 serves as the parent corporation's representative by performing services the corporation would

27

28     [5]The parties are warned that any arguments contained in future pleadings must be within the body of
the document or will not be considered.

1   perform if it did not have a representative performing the duties. <u>Id.</u> at 928 (citing <u>Chan v.</u>
2   <u>Society Expeditions, Inc.</u>, 39 F.3d 1398, 1405 (9th Cir. 1994)." <u>Unocal Corp.</u>, 248 F.3d at 928
3   (internal quotations omitted). In other words, the subsidiary's presence substitutes for the
4   presence of the parent. <u>Id.</u> Contrary to Plaintiff's argument, the Court finds that an agency
5   relationship requires "day-to-day" control of the subsidiary. The Ninth Circuit in <u>Unocal Corp.</u>
6   clearly stated "an alter ego or agency relationship is typified by parental control of the
7   subsidiary's internal affairs or daily operations." 248 F.3d at 926. Additionally, this Court
8   disagrees with Plaintiff's assertion that the reasoning of <u>Modesto City Schools v. Riso Kagaku</u>
9   <u>Corp.</u>, 157 F.Supp.2d 1128 (E.D.Cal. 2001) is persuasive. The district court in <u>Modesto City</u>
10  <u>Schools</u> determined that although the Ninth Circuit states an agency relationship requires daily
11  control of the subsidiary's operations, it does not require such a finding in that the decision
12  merely mentions "day-to-day" control in the discussion on agency. This Court finds that in the
13  discussion of agency, the Ninth Circuit explicitly states the parent company does not control
14  the day-to-day activities of the subsidiary and goes on to find, as such, the plaintiffs have not
15  met their burden. <u>See</u> <u>Unocal Corp.</u>, 248 F.3d at 930.

16       As discussed above, Plaintiff fails to demonstrate "day-to-day" control of Nesscap, Inc.'s
17  daily operations and, therefore, no agency relationship exists. Accordingly, service upon
18  Nesscap, Inc. is not proper service upon Nesscap, Co. However, the Court will not dismiss the
19  action against Nesscap, Co. Instead, the Court quashes service and directs Plaintiff to effect
20  service upon Defendant Nesscap, Co.

21                          **CONCLUSION AND ORDER**
22       **IT IS HEREBY ORDERED:**
23  1.   Defendant Nesscap, Inc.'s motion to dismiss is **DENIED.**
24  2.   Defendant Nesscap, Co.'s motion to dismiss is **GRANTED IN PART AND**
25       **DENIED IN PART.** Service upon Nesscap, Co. is **QUASHED.** Plaintiff shall
26       effect service upon Nesscap, Co. within 45 days from the date of this order.
27       Nesscap, Co. must respond to the complaint within 30 days from receipt of
28       service.

3. The hearing on Plaintiff's motion for preliminary injunction set for March 8, 2007 is VACATED and rescheduled to **April 5, 2007** at **3:00p.m.** The Clerk of Court shall unseal Nesscap, Inc.'s opposition to the motion for preliminary injunction filed February 1, 2007. Defendant shall serve a copy on Plaintiff **on or before March 15, 2007.** Any reply shall be filed **on or before March 22, 2007.**

DATED: March 9, 2007

HON. JOHN A. HOUSTON
United States District Judge

**EXHIBIT 8**

# EDWARDS ANGELL PALMER & DODGE LLP

101 Federal Street  Boston, MA 02110  617.439.4444  *fax* 617.439.4170  eapdlaw.com

Mail to P.O. Box 55874
Boston, MA 02205

Brian M. Gaff

(617) 517-5597
*fax* (888) 325-9725
bgaff@eapdlaw.com

March 15, 2007

**VIA FACSIMILE (858-720-5125)**
Confirmation via First Class Mail

Brian M. Kramer, Esq.
Morrison & Foerster LLP
12531 High Bluff Drive, Suite 100
San Diego, CA  92130-3014

> RE:  NessCap Co., Ltd. and NessCap, Inc. v. Maxwell Technologies, Inc.
> <u>Case No. 1:07-cv-00035-GMS (D. Del.)</u>

Dear Brian:

In view of the order issued on March 13 in the San Diego litigation (case no. 3:06-cv-02311-JAH-BLM), and in the interest of judicial economy, we are prepared to withdraw our complaint in the Delaware declaratory judgment action referenced above.  Please let us know by the end of business day (5:00 p.m. EDT) tomorrow whether Maxwell will withdraw its answer, counterclaims, and motion to consolidate as well, thereby terminating this case.

Very truly yours,

Brian M. Gaff

cc: Karen E. Keller, Esq., Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, 1000 West St., Wilmington, DE  19801

BOS2_597284.1

**EXHIBIT 9**

**MORRISON | FOERSTER**

12531 HIGH BLUFF DRIVE
SUITE 700
SAN DIEGO
CALIFORNIA 92130-2040

TELEPHONE: 858.720.5100
FACSIMILE: 858.720.5125

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

**Via Telefacsimile**

March 15, 2007

Writer's Direct Contact
858 314 5415
BMKramer@mofo.com

Brian M. Gaff
Edwards Angell Palmer & Dodge LLP
101 Federal Street
Boston, MA  02110

Re:    *NessCap Co., Ltd. and NessCap, Inc. v. Maxwell Technologies, Inc.*
       Case No. 1:07-cv-00035-GMS (D. Del.)

Dear Brian:

I write in response to your letter from this morning regarding the second Delaware litigation between Maxwell and NessCap. Maxwell shares your interest in judicial economy. The most efficient course would be to consolidate the San Diego and Delaware litigations into one case in one forum. Thus, Maxwell will agree to withdraw its answer, counterclaims, and motion to consolidate in C.A. No. 07-0035-GMS without prejudice if you agree to accept service on behalf of NessCap Co., Ltd. in the San Diego litigation, and withdraw your opposition to Maxwell's motion to transfer the first Delaware action to the Southern District of California.

I am available all day today and tomorrow to discuss this.

Sincerely,

Brian M. Kramer

Brian M. Kramer

cc:   K. Keller
      D. Kraft

sd-364028

**EXHIBIT 10**

# EDWARDS ANGELL PALMER & DODGE LLP

101 Federal Street  Boston, MA 02110  617.439.4444  *fax* 617.439.4170  eapdlaw.com

Mail to P.O. Box 55874
Boston, MA 02205

Brian M. Gaff

(617) 517-5597
*fax* (888) 325-9725
bgaff@eapdlaw.com

March 16, 2007

**VIA FACSIMILE (858-720-5125)**
Confirmation via First Class Mail

Brian M. Kramer, Esq.
Morrison & Foerster LLP
12531 High Bluff Drive, Suite 100
San Diego, CA 92130-3014

> RE:  NessCap Co., Ltd. and NessCap, Inc. v. Maxwell Technologies, Inc.
> Case No. 1:07-cv-00035-GMS (D. Del.)

Dear Brian:

Notwithstanding Maxwell's rejection of NessCap Co., Ltd.'s December 1, 2006 offer to drop its objections to Maxwell's insufficient service of process in the San Diego litigation (case no. 3:06-cv-02311-JAH-BLM), we will agree to your proposal of March 15, 2007 to accept service of Maxwell's complaint on behalf of NessCap Co., Ltd. in that action on condition that, as permitted by the court's order of March 13, 2007, NessCap Co., Ltd. will have thirty (30) days from receipt of service to respond to the complaint, and on the further condition that Maxwell withdraw its answer, counterclaims, and motion to consolidate in the Delaware declaratory judgment action referenced above. If you agree to these conditions we will, as originally proposed, withdraw our complaint in the Delaware declaratory judgment action, thereby ending that case.

We cannot agree to your request that we withdraw our opposition to Maxwell's motion to transfer the first Delaware case (case no. 1:06-cv-00764-GMS) to the San Diego District Court. This case is properly before the Delaware court. We recognize that you disagree, but we believe that there is no basis to transfer the action and, in view of the different matters at issue in this case compared to those in the case pending in San Diego, that there is no basis to combine these actions.

# EDWARDS ANGELL PALMER & DODGE LLP

Brian M. Kramer, Esq.
March 16, 2007
Page 2 of 2

Please let us know by the end of business today whether, in the Delaware declaratory judgment action, Maxwell will withdraw its answer, counterclaims, and motion to consolidate in return for our withdrawing our complaint and our acceptance of service of Maxwell's San Diego complaint on behalf of NessCap Co., Ltd.

Very truly yours,

Brian M. Gaff

cc: Karen E. Keller, Esq., Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, 1000 West St., Wilmington, DE  19801

BOS2_597630.1

**EXHIBIT 11**

**MORRISON | FOERSTER**

12531 HIGH BLUFF DRIVE
SUITE 100
SAN DIEGO
CALIFORNIA 92130-2040

TELEPHONE:858.720.5100
FACSIMILE:858.720.5125

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

**Via Telefacsimile**

March 16, 2007

Writer's Direct Contact
858 314 5415
BMKramer@mofo.com

Brian M. Gaff
Edwards Angell Palmer & Dodge LLP
101 Federal Street
Boston, MA 02110

Re:    *NessCap Co., Ltd. and NessCap, Inc. v. Maxwell Technologies, Inc.*
       Case No. 1:07-cv-00035-GMS (D. Del.)

Dear Brian:

I write in response to your letter from this afternoon. NessCap's offer does not achieve our judicial efficiency goals. Thus, Maxwell will not agree to NessCap's request.

Feel free to call me with any questions.

Sincerely,

Brian M. Kramer

cc:    K. Keller
       D. Kraft

## CERTIFICATE OF SERVICE

I, Denise Seastone Kraft, hereby certify that on March 23, 2007, the attached

**NessCap Co., Ltd.'s Brief In Response To Defendant's Motion To Consolidate C.A.**

**1:06-cv-00764-GMS With C.A. 1:07-cv-00035- GMS** was served on the following

persons in the manner indicated, and was electronically filed with the Clerk of the Court

using CM/ECF:

| VIA HAND DELIVERY | VIA U.S. FIRST CLASS MAIL |
|---|---|

Josy W. Ingersoll, Esq.　　　　　　　David C. Doyle, Esq.
John W. Shaw, Esq.　　　　　　　　　Brian M. Kramer, Esq.
Karen E. Keller, Esq.　　　　　　　　Morrison & Foerster LLP
Young Conaway Stargatt & Taylor LLP　12531 High Bluff Drive
1000 West Street　　　　　　　　　　Suite 100
Brandywine Building, 17th Floor　　　　San Diego, CA  92130
Wilmington, DE  19801

Denise Seastone Kraft (DE No. 2778)